# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LUZ-EUGENIA COX-FUENZALIDA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CV-12-1279-R** |
| | ) | |
| **THE STATE OF OKLAHOMA** *ex rel.* | ) | |
| **THE BOARD OF REGENTS OF THE** | ) | |
| **UNIVERSITY OF OKLAHOMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Before the Court is the Motion for Summary Judgment filed by Defendant The

State of Oklahoma *ex rel.* The Board of Regents of the University of Oklahoma. Doc. No.

34. For the following reasons, this motion is GRANTED.

## <u>Background</u>

Plaintiff Luz-Eugenia Cox-Fuenzalida is a tenured associate professor in the

University of Oklahoma's Department of Psychology. Plaintiff and another professor in

the department, Dr. Michael Mumford, have had their differences over the years. As early

as 2006, Dr. Mumford began physically growling at Plaintiff when they passed each

other in the halls, sometimes doing this while Plaintiff's children were present.[1] After this

began occurring, Plaintiff reported Dr. Mumford's behavior to Dr. Jorge Mendoza, the

department's chair, more than once per year. Dr. Mumford's behavior towards Plaintiff

---

[1] The timeline surrounding Dr. Mumford's behavior is fairly murky. For instance, Plaintiff testified that she first reported Dr. Mumford's growling shortly after it happened in 2006. Doc. No. 34, Ex. 1, at 8. But in Plaintiff's response brief, Plaintiff makes it appear as though this behavior did not begin to occur until May 2011. Doc. No. 37, at 5.

apparently grew worse in the spring of 2011, when he began blocking Plaintiff from riding the elevators with him.[2] Plaintiff testified that Dr. Mumford would do this by putting his hand up when he saw her approaching the elevator on which he was riding until the doors shut. Dr. Mumford did this without saying anything and without touching Plaintiff, although it was clear that he did not want her to ride the elevators with him. This took place at least five or six times, and Plaintiff reported this behavior to Dr. Mendoza whenever it occurred.

On May 12, 2011, Dr. Scott Gronlund, the assistant chair of the department, emailed the tentative teaching assistant assignments for the fall 2011 semester to the professors within the department.[3] Plaintiff was tentatively assigned one teaching assistant for one of the sections of the Introduction to Personality course that she was planning to teach that semester, but she was not assigned a teaching assistant for the other section she was planning to teach. Both sections of her Introduction to Personality course were fairly large, with each being capped at 120 students. Despite this tentative assignment, Plaintiff maintains that at some indefinite time, Dr. Mendoza promised her that she would receive two teaching assistants for her two sections of Introduction to Personality for the fall 2011 semester.

On approximately June 28, 2011, Plaintiff met with Dr. Mendoza concerning an unrelated incident that had occurred between her and Dr. Mumford. At this meeting,

---

[2] Again, it is not clear when Dr. Mumford began engaging in this behavior. Plaintiff testified about the circumstances surrounding the first time Dr. Mumford blocked her from accessing the elevators in 2011, but she also testified that she could not say for sure whether Dr. Mumford had blocked her from the elevators prior to 2011. *See* Doc. No. 34, Ex. 1, at 2.

[3] Dr. Gronlund worked collaboratively with Dr. Mendoza on the teaching assistant assignments, but Dr. Mendoza had to give his final approval over the assignments.

Plaintiff once again complained about Dr. Mumford's behavior, specifically mentioning that Dr. Mumford did not treat other male professors within the department the way that he treated her. After this meeting, Plaintiff also complained about Dr. Mumford's behavior to Paul Bell, Dean of the College of Arts and Sciences. In complaining to Dean Bell, Plaintiff again mentioned that Dr. Mumford treated her differently than he treated the male professors within the department.

On July 13, 2011, Dr. Gronlund emailed the finalized teaching assistant assignments for the fall 2011 semester to the professors within the department. Plaintiff's final assignment was identical to the tentative assignment contained in the May 2011 email—Plaintiff was assigned one teaching assistant for one section of her Introduction to Personality course, and she was not assigned a teaching assistant for the other section of her course. Even though Plaintiff's final assignment was identical to her tentative assignment, Plaintiff insists that following her complaints about Dr. Mumford on approximately June 28, 2011, in which she went "beyond the walls" of the department to Dean Bell, Dr. Mendoza retaliated against her by giving her only one teaching assistant for her two sections of Introduction to Personality instead of the two teaching assistants she asserts were previously promised.

Plaintiff's assigned teaching assistant for the fall 2011 semester was a graduate student in personality, and Plaintiff was allowed to use her teaching assistant to help with both sections of her Introduction to Personality course. Further, despite only having one

teaching assistant for the semester, Plaintiff had more instructional aides for the semester than any other professor in the department.[4]

During the fall 2010 semester—one year before the events surrounding the fall 2011 semester occurred—Plaintiff was provided with only one teaching assistant for two sections of the same Introduction to Personality course. Each of these sections was capped at 120 students—the same cap as was placed on the sections of her course during the fall 2011 semester. Additionally, Plaintiff's annual evaluation for the 2010 calendar year resulted in an overall score of 3.86, including three-year average scores of 4.47 for teaching and 3.33 for research.[5] By way of comparison, Plaintiff's annual evaluation for the 2011 calendar year resulted in an overall score of 3.96, including three-year average scores of 4.4 for teaching and 3.4 for research.

Plaintiff filed a charge of discrimination with the Oklahoma Human Rights Commission and the EEOC on August 9, 2011, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964. Plaintiff then filed a second charge of discrimination on January 31, 2012, alleging retaliation due to the exercise of her Title VII rights. Plaintiff received right to sue letters for both charges on July 31, 2012, and Plaintiff filed suit in the District Court of Cleveland County on October 26, 2012. Defendant removed Plaintiff's case to this Court on November 19, 2012. Plaintiff's case includes a single claim for Title VII retaliation based upon the events surrounding her

---

[4] Plaintiff maintains that instructional aides are more limited in their abilities, and that they are assigned by someone outside of the department.

[5] These annual evaluations are performed in order to measure a professor's progress and to determine when promotions are appropriate. *See* Doc. No. 38, Exs. 40-41. Plaintiff's evaluations were performed by a three-member committee, and Dr. Mendoza was one of the members on this committee.

assignment of one teaching assistant for the fall 2011 semester, and Defendant has now moved for summary judgment with regard to this claim.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir. 1977) (citations omitted). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Title VII Retaliation

42 U.S.C. § 2000e-3(a) provides that it is unlawful "for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by [Title VII]." To prevail on a Title VII retaliation claim, the plaintiff must establish that retaliation had a role in the employment decision at issue. *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008). Where no direct evidence of retaliation exists, the *McDonnell Douglas* burden-shifting framework governs the plaintiff's case. *Id.* at 1225, 1227.

Under this framework, the plaintiff must first establish her prima facie case of retaliation by showing "(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal

connection between the protected activity and the adverse employment action." *Id.* at 1227 (quoting *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004)). If the plaintiff establishes her prima facie case, then the burden shifts to the employer to "proffer a legitimate, nondiscriminatory reason" for its employment action. *Id.* (citation omitted). If the employer sets forward a legitimate, nondiscriminatory reason for the action, then the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual. *Id.* (citation omitted). Defendant argues that Plaintiff cannot show any of the three elements of her prima facie case. And even if she could do so, Defendant argues that Plaintiff cannot show that its nondiscriminatory reason for the challenged action is pretextual.

The first element of Plaintiff's prima facie case requires Plaintiff to show that she engaged in protected opposition to discrimination. "Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (citation omitted). Importantly, "[a]lthough no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Faragella v. Douglas Cnty. Sch. Dist. RE 1*, 411 F. App'x 140, 148 (10th Cir. 2011) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)) (internal quotation marks omitted).

Defendant argues that Plaintiff cannot show that she engaged in any protected opposition. Defendant's arguments largely hinge upon the fact that Plaintiff's allegations establishing this case's timeline have changed since she filled out the intake questionnaire

for her second charge of discrimination with the EEOC. Additionally, Defendant argues that no other evidence besides Plaintiff's own testimony establishes that Plaintiff ever complained to her superiors of conduct made unlawful by Title VII during the relevant time period.

Despite Defendant's arguments, the Court finds Plaintiff's testimony sufficient to establish the first element of her prima facie case.[6] Plaintiff testified that when she complained about Dr. Mumford's behavior to Dr. Mendoza, she told him that "Mike Mumford would not do this to males." Doc. No. 37, Ex. 1, at 28. In other words, Plaintiff testified that she defined gender roles in her complaints about Dr. Mumford. Doc. No. 37, Ex. 1, at 28-29. Plaintiff also testified that in complaining to Dean Bell of Dr. Mumford's behavior towards her, she made it clear that she believed her treatment was based upon her gender. Doc. No. 37, Ex. 1, at 25. Because these informal complaints indicated Plaintiff's concern over conduct made unlawful by Title VII, they qualify as protected opposition. Thus, for purposes of this Order, Plaintiff has established the first element of her prima facie case.

The second element of Plaintiff's prima facie case requires Plaintiff to show that she suffered an adverse employment action. The Supreme Court has explained that this requires Plaintiff to show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*

---

[6] Defendant essentially argues that the Court should not believe Plaintiff's testimony. Doc. No. 34, at 22; Doc. No. 38, at 6. But credibility is an issue to be resolved by the trier of fact, and the Court will not entertain Defendant's argument in this regard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted) (internal quotation marks omitted). To be actionable, Plaintiff must show that she suffered an "injury rising to a 'level of seriousness.'" *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007)). The employer's conduct does not need to affect the terms and conditions of employment, *White*, 548 U.S. at 64, but the inquiry is an objective one, and "not based on a plaintiff's personal feelings." *Daniels*, 701 F.3d at 638 (quoting *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009)) (internal quotation marks omitted). "Acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions, although a mere inconvenience or an alteration of job responsibilities will not suffice." *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (quotation omitted) (internal quotation marks omitted). Finally, "the fact that an employee continues to be undeterred in his or her pursuit of a remedy . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008).

Defendant argues that Plaintiff cannot show that she suffered a materially adverse employment action for several reasons. First, Defendant asserts that there has been no change in Plaintiff's employment status since the fall 2011 semester. Defendant also emphasizes that a year prior to the semester in which Plaintiff was allegedly retaliated against, Plaintiff faced the exact same situation of having only one teaching assistant for her two sections of Introduction to Personality, with each section capped at the same

number of students as were in her fall 2011 sections. Additionally, Defendant argues that Plaintiff's annual evaluations for both the 2010 and 2011 calendar years strengthen its position that Plaintiff did not suffer a materially adverse action. Defendant also underscores that after the teaching assistant assignments for the fall 2011 semester were finalized, Plaintiff filed two separate charges of discrimination with the EEOC, indicating that the challenged action was not sufficiently material and adverse.

In response, Plaintiff argues that teaching assistants are vital to professors who teach large introductory courses, and Plaintiff asserts that that the lack of teaching assistant support during the fall 2011 semester "largely prevented her from completing her job duties." Doc. No. 37, at 29. Plaintiff states that without adequate teaching assistant support, she could not properly teach her courses, research, and publish. Doc. No. 37, at 26-27. Plaintiff also points to the fact that in his deposition, Dr. Mendoza could not remember a time when another professor was required to teach so many students with only one teaching assistant. Further, Plaintiff argues that the Court should not give much weight to the fact that she filed two charges of discrimination after the challenged action occurred, as doing so would place Plaintiff in an unwinnable "catch-22." Doc. No. 37, at 27-28.

Having considered the parties' arguments, the Court finds that Plaintiff cannot show that she suffered a materially adverse employment action. Plaintiff initially asserted that having only one teaching assistant for such a large number of students during the fall 2011 semester was a novel experience for her, but Defendant provided evidence in its reply brief indicating that Plaintiff faced the same situation during the fall 2010

semester.[7] Indeed, Plaintiff taught the exact same course to the exact same number of students in the exact same number of sections with the help of only one teaching assistant during the fall 2010 semester. Moreover, the annual evaluations of Plaintiff's performance as a professor illustrate that she did not suffer an injury rising to the "level of seriousness" the law requires when she was assigned only one teaching assistant for the fall 2011 semester. In fact, Plaintiff's overall score for her performance as a professor during 2011 was higher than it was during 2010. These evaluations also show that Plaintiff was able to publish during 2011, while she did not publish at all during 2010. Thus, the evidence demonstrates that Plaintiff was able to complete her job duties during 2011 as satisfactorily as she had previously been able to complete them.[8] Finally, Plaintiff felt free to file not one, but two separate charges of discrimination with the EEOC after the teaching assistant assignments for the fall 2011 semester were finalized. That is, Plaintiff was undeterred in her pursuit of a remedy after the fall 2011 teaching assistant assignments were finalized in July 2011. As the Tenth Circuit has reasoned, this too sheds light "as to whether the actions are sufficiently material and adverse to be actionable." *See Somoza*, 513 F.3d at 1214. Taking into account all of the above, the Court concludes that Plaintiff's assignment of one teaching assistant for her two sections of Introduction to Personality during the fall 2011 semester was not materially adverse. In

---

[7] Plaintiff admits this in her supplemental brief, but she still maintains that being assigned only one teaching assistant for the fall 2011 semester was materially adverse.

[8] It is also noteworthy that even though Plaintiff only had the help of one teaching assistant during the fall 2011 semester, her teaching assistant for the semester was a graduate student in personality, meaning he was particularly qualified to assist with Plaintiff's two sections of Introduction to Personality. Further, Plaintiff had the help of the most instructional aides of any professor in the department during the semester. While these aides are more limited in their abilities, this bolsters the Court's finding that Plaintiff's assignment of one teaching assistant for the semester was not materially adverse.

other words, this challenged action would not dissuade a reasonable worker from making or supporting a charge of discrimination. *See White*, 548 U.S. at 68.

Because Plaintiff has not shown that she suffered a materially adverse employment action, she cannot meet her prima facie burden for her Title VII retaliation claim. Therefore, the Court declines to address the remaining issues in the parties' briefs. Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 13th day of May, 2014.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE